105 So.2d 392 (1957)
235 La. 708
Jacques E. BLEVINS
v.
MANUFACTURERS RECORD PUBLISHING COMPANY et al.
No. 43469.
Supreme Court of Louisiana.
November 12, 1957.
On Rehearing May 26, 1958.
Opinion on Rehearing October 14, 1958.
Opinion on Rehearing October 15, 1958.
*394 Henican, James & Cleveland, C. Ellis Henican, Clem H. Sehrt, New Orleans, C. H. Downs, Alexandria, for plaintiff-appellant.
Herold, Cousin & Herold, by Sumter P. Cousin, Shreveport, Charles Janvier, Tinsley Gilmer, Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, John E. Fleury, Gretna, Doyle, Smith & Doyle, New Orleans, Smitherman, Smitherman & Purcell, Shreveport, Ellender & Wright, Houma, James P. Vial, Hahnville, for defendants-appellees.
Hawthorne's Opinion on Rehearing October 14, 1958.
Fournet's Opinion on Rehearing October 15, 1958.
SIMON, Justice.
By this petitory action the plaintiff claims title to and possession of an irregularly shaped tract of land comprising 408 acres situated in Section 40, Township 14 South, Range 20 East, St. Charles Parish, Louisiana, shown on the free-hand tri-colored sketch of the plat shown in the record and described more fully in his petition as follows:
"Tract No. 1: That portion of Fractional Section 40 lying West of the Section line between Section 17 and Section 18, produced, and North of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River. The said tract being colored in blue on the sketch shown below.
"Tract No. 2: That portion of Fractional Section 40 lying West of the Section line between Section 17 and 18, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River. The said tract being colored in red on said sketch.
"Tract No. 3: That portion of Fractional Section 40 lying East of the Section line between Section 17 and Section 18, produced, *395 and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River. The said tract being colored in green on said sketch."

*396 The trial court rendered judgment in favor of defendant and against the plaintiff, his heirs and assigns, dismissing his suit and rejecting his demand.
During the pendency of this suit below the plaintiff, Jacques E. Blevins, died and thereafter this case was prosecuted and this appeal is taken by his estate, appearing through the duly qualified and authorized testamentary executrix.
In order to properly dispose of the issues herein presented it is necessary to chronologically set forth the material and pertinent transfers pleaded by plaintiff in support of his alleged title, as well as those pleaded by defendants. At the outset it should be stated that the only land involved herein is a portion of fractional Section 40, Township 14 South, Range 20 East, as hereinabove platted and described, notwithstanding that the instruments of conveyance hereinafter referred to include the description of land or lands other than the subject property.
The transfers pleaded by plaintiff in support of his alleged title are as follows:
1. The act of sale dated September 10, 1906 by O. W. Crawford to Truck Farm Land Company, Ltd.
2. The tax sale of property assessed in the name of Truck Farm Land Company, Ltd. for the unpaid taxes for 1907, dated July 25, 1908 by the sheriff and ex-officio tax collector for the Parish of St. Charles to Allan T. Dusenbury, and confirmation thereof dated July 31, 1908.
3. The act of sale dated December 15, 1910 by Truck Farm Land Company, Ltd. joined by Allan T. Dusenbury, to the Louisiana Farm Land Company, Ltd.
4. The act of sale dated December 17, 1910 by the Louisiana Farm Land Company, Ltd. to Julius F. Funk. By an act under private signature dated March 14, 1911 the said Funk transferred an undivided onehalf interest in the said property to Harry C. Snell, who on August 21, 1911 by a similar act reconveyed same to Julius F. Funk.
5. The act of sale dated July 21, 1911 by Julius F. Funk and Harry C. Snell to J. Lahroy Slusher.
6. The act dated July 26, 1911 by J. Lahroy Slusher to the Louisiana Delta Lands Company.
7. The act dated November 21, 1913 by Louisiana Delta Lands Company to Edward Wisner.
8. The act dated April 21, 1917 by the executors of the estate of Edward Wisner to Mrs. Mary Jane Wisner.
9. The act dated April 21, 1917 by Mrs. Mary Jane Wisner to Wisner Estates, Inc., a Louisiana corporation.
10. By act under private signature dated May 22, 1940, amended by act dated December 12, 1945, the Wisner Estates, Inc. transferred to plaintiff herein an undivided one-half interest in the property. By act dated December 12, 1945 the Wisner Estates, Inc. transferred all of its right, title and interest in and to the subject property to plaintiff. All of said deeds were recorded in the conveyance records of the Parish of St. Charles. (The various mineral deeds executed, not being material to the issue herein, are not here delineated.)
In the act dated December 15, 1910 the property therein transferred by the Truck Farm Land Company, Ltd., joined by Allan T. Dusenbury to the Louisiana Farm Land Company, Ltd., appellant's author in title, is described in part as follows:
"All lots or Frc. Sec. 38, 39 and 40 except the previously sold portions of same which are as follows:

* * * * * *
"There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act passed before William Renaudin, Notary Public, and recorded in the Conveyance Records of St. Charles Parish, in Book ___, Page ___.
"All of the above being in Township 14 South, Range 20 E."
*397 Transfers executed subsequent to the said deed of December 15, 1910 excluded or excepted the approximately 440 acres previously sold to Albert Phenis, as above recited.
Plaintiff also pleads a ten-year prescriptive title and alleges that his author in title, Truck Farm Land Company, Ltd., from the date of its acquisition dated September 10, 1906, as did its successors in title, took and maintained actual open, notorious and uninterrupted physical possession as owner or owners thereof for a period in excess of ten years.
Plaintiff also presented a third or independent title based upon a tax deed dated July 20, 1920. For the year 1919 the subject property was assessed in the name of Wisner Estates, Inc.; and because of non-payment of taxes said property was adjudicated to the State of Louisiana on July 17, 1920. On or about June 11, 1921 the said property was redeemed by H. H. Timken, and on June 30, 1921 judgment was rendered recognizing him as having paid the full redemption price and, as a creditor, therefore subrogated to the rights of the State, including the liens and privileges bearing against each specific tract of land to the extent of the actual taxes bearing against the same. Thereafter in execution of said judgment Timken became the adjudicatee. On February 13, 1926, by act under private signature, the said Timken sold the subject property herein to the Border Research Corporation, the name of which was subsequently changed to the Louisiana Land and Exploration Co., who on December 12, 1945, sold and transferred the said property to Jacques E. Blevins, plaintiff.
The transfers pleaded by defendants in support of their alleged title are the following:
1. The tax sale dated July 25, 1908 by the sheriff and ex-officio tax collector for the Parish of St. Charles to Allan T. Dusenbury, and confirmation thereof dated July 31, 1908, being the same tax deed relied on by plaintiff.
2. The act of sale dated March 9, 1910 by Allan T. Dusenbury to Albert Phenis, the property therein being described as follows:
"That portion of lot or Fractional section 40 lying West of the section line between Sections seven (7) and eight (8) above, produced and a line drawn West from a point on the center line of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet North of the intersection of said Railroad with Bayou Saut D'Ours, and, that portion of lot or Section Thirty-nine (39) bounded on the North by the above described land, on the East by the right of way of the said Morgan Louisiana & Texas R. R., on the South by Bayou Saut D'Ours, and on the West by Section Forty (40), all being in T. 14 S. R. 20 E. South Eastern Land District of Louisiana West of the Mississippi River and containing Four hundred and forty-two (442) acres, more or less; * * *."
3. The act of sale dated April 21, 1910 by Albert Phenis to Ray C. Power, the property therein described being the same as contained in the Dusenbury-Phenis deed of March 9, 1910.
4. The correction deed dated March 16, 1912 by Albert Phenis to Ray C. Power, purportedly correcting the description contained in the Phenis to Power deed of April 21, 1910 so as to read the same as shown below in the Dusenbury-Phenis correction deed of April 18, 1912.
5. The correction deed dated April 18, 1912, by Allan T. Dusenbury to Albert Phenis purportedly correcting the description contained in the Dusenbury-Phenis deed dated March 9, 1910 so as to read as follows:
"That portion of lot or Fractional section 40 lying West of the section line between Sections seven (7) and eight (8) above produced and south of a line drawn West from a point on the center line of the Morgan's Louisiana and Texas Railroad *398 Co., said point being 600 feet North of the intersection of said railroad, with Bayou Saut D'Ours, and that portion of lot or section thirty-nine (39) bounded on the north by the above described line on the east by the right of way of the said Morgan's Louisiana and Texas R. R., on the South by Bayou Saut D'Ours, and on the west by section 40, all in T. 14 S. R. 20 East; Southeastern Land District of Louisiana, West of the Mississippi river, and containing Four hundred and forty-two (442) acres, more or less; the description of said otherwise being correct."
6. The act of sale dated July 23, 1915 by Ray C. Power to Manufacturers Record Publishing Company, a defendant herein, the description therein contained being the same as that embodied in the Phenis-Power and Dusenbury-Phenis correction deeds as hereinabove set forth.
It is observed that the asserted titles of both litigants find their source in a common author, Allan T. Dusenbury.
It is also observed that by the said correction deeds the description in both the original Dusenbury-Phenis deed of March 9, 1910 and the original Phenis-Power deed of April 21, 1910 was sought to be corrected so as to insert the words "South of" before the phrase "a line drawn west from a point on the center line, * * *" and so as to substitute the word "line" for the word "land," the latter change being made with respect to only that portion of land described as being located in Section 39. Hereinafter in disposing of the contentions of the parties our discussion shall be confined to the original Dusenbury-Phenis deed of March 9, 1910, and the Dusenbury-Phenis April 18, 1912 correction deed. Whatever rights flow from the Phenis-Power transactions are impertinent here.
Appellant attacks the legality and validity of the original Dusenbury-Phenis deed dated March 9, 1910 and contends that the description therein employed is meaningless and thus fatally defective, not subject to the identification of any specific tract of land sought to be conveyed, the defectiveness being such as not capable of serving as a deed translative of title to any land. With equal force he contends that his author in title acquired from Dusenbury by deed dated December 15, 1910 all of Section 40 except that portion of land acquired by Albert Phenis by deed dated March 9, 1910; that, the description contained in said deed of March 9, 1910 being meaningless and fatally defective as well as the source from which the exception obtains its force and color, the said exception is equally fatal; and that therefore plaintiff's author in title, by virtue of the deed of December 15, 1910 became vested with full title to all of Section 40, on the ground that where the exception falls the property in its entirety, including that attempted to be excepted, becomes vested in the grantee.
Appellant further contends that the execution of the correction deed of April 18, 1912 was futile for the reason that in the December 15, 1910 deed Dusenbury divested himself of all right, title and interest which he had or may have had to any and all of the lands therein conveyed and described and plaintiff's author in title became vested with full ownership of all of Section 40 including the land therein sought to be excepted.
The appellees concede that the March 9, 1910 deed may be burdened with amguity but contend that by employing alleged common practices and methods such as the supplying of specific calls and directions and substituting words for those therein contained the property described could be located and further that the correction instrument of April 18, 1912 validly and adequately supplied the boundary calls and specific directive omitted from the March 9, 1910 deed and therein substituted the word "line" for the word "land."
*399 Appellees also contend that appellant's predecessors in title are estopped from claiming title to the disputed acreage for the reason that all transfers subsequent to the deed dated December 15, 1910 consistently excepted approximately 440 acres located in Sections 39 and 40, Township 14 South, Range 20 East previously sold to Albert Phenis and that therefore the recognition of this exception in the various transfers constituted an acquiescence in and a ratification of appellees' ownership thereof.
In the alternative appellees plead a ten-year prescriptive title in that they and their authors in title, under their respective acquisitions, went into actual, physical, open and undisturbed possession of said land and remained in such possession during their respective ownerships for a period in excess of ten years and that therefore they have acquired a valid prescriptive title thereto.
Therefore we deem the primary issue to be whether or not appellant's predecessor in title acquired all of Section 40 in the deed dated December 15, 1910, or whether the appellees' predecessor in title had theretofore acquired the three above-described tracts in Section 40 by virtue of the deed dated March 9, 1910. If the description in the March 9, 1910 deed is held to be sufficient to validly identify the land therein transferred then the necessity to consider any other aspect of this case is eliminated. If Phenis did in fact and in law acquire the land that appellees contend is described in the said deed, then appellant has no claim whatever to the property involved in this litigation. Hence, the title of appellees must rest exclusively on the validity of the description contained in the March 9, 1910 deed, and we are concerned primarily with (1) the interpretation of said description, and (2) the effect thereon of the correction deed dated April 18, 1912, both descriptions being shown above.
Referring to the above sketch of the plat shown in the record, the section line between Sections 7 and 8 is the line marked A-B and said line produced through Section 40 is the line marked C-D. The line drawn West from the point on the center line of the Morgan's Louisiana & Texas R. R. Co., said point being 600 feet North of the intersection of said railroad with Bayou Saut D'Ours, is the line East-West marked X-Y. The land enclosed West of line C-D and North of line X-Y is shown as Tract 1. The land enclosed West of line C-D and South of line X-Y is shown as Tract 2. The land enclosed East of line C-D and South of line X-Y is shown as Tract 3.
It is readily seen that in relation to the sketch the description in the March 9, 1910 deed calls for land lying West of line C-D and West of line X-Y. It is significant that if line X-Y is to be used as a boundary line the land bounded thereby must be located either North or South thereof, or both. Without a North or South directive it is obviously impossible to locate the land and intended to be described in said deed. Therefore, in order to give meaning to the use of line X-Y as a boundary, a North or South directive, or both, must appear in and be a part of the description. For it is manifest that no land can be intelligently described as lying west of an East-West line; therefore such a directive is meaningless.
Appellees contend that the words "South of" should be inserted so as to show the land transferred as that portion or fraction of Section 40 lying West of line C-D and "South of" line X-Y, and thereby cause the description to read as follows:
"That portion of lot or fractional Section 40 lying West of the Section line between Sections 7 and 8 above, produced and South of a line drawn West from a point on the center line of the Morgan's Louisiana and Texas Railroad Company, * * *" (Inserted words italicized by us.)
Should we accept appellees' contention, which we do not, the land then described would obviously be enclosed within that area West of line C-D and South of line X-Y and thus limited to Tract 2 in the *400 above sketch. Furthermore, there is just as much, if not more justification in adding the words "North of" instead of "South of," for as a matter of fact in the absence of a specific directive the land first enclosed upon the drawing of the specific lines C-D and X-Y would lie West of line C-D and North of line X-Y; and in such event the description would be limited to the area shown as Tract 1 in said sketch. Thus it is evident that by inserting either the words "North of" or the words "South of" to the same description and in the same manner, two completely different results are obtained.
However, appellees argue that the embodying of the words "South of" in the description as above indicated would include not only Tract 2, lying West of line C-D and South of line X-Y, but also Tract 1, lying West of line C-D and North of line X-Y, and Tract 3, lying East of line C-D and South of line X-Y. Whether we accept a North or South directive, to include Tract 3 in the description would obviously totally disregard the specific calls for land lying West of line C-D, there being no call for land lying East of line C-D.
Referring to the correction deed dated April 18, 1912, it is observed that the words "South of" have been inserted before the phrase "a line drawn West from a point on the center line, * * *" and the word "line" has been substituted for the word "land," the latter with respect to the portion of land described as being in Section 39, which section is not involved in this suit. It is also observed that the words supplied or changed by the correction instrument are the identical words employed by appellees in their endeavor to supply specific calls and directives to the apparently meaningless description contained in the original deed of March 9, 1910. The legal effect of said correction deed will be hereinafter discussed. However, if it can be held that the correction instrument validly corrected the description in the March 9, 1910 deed, then in that event the descriptive calls would, as above observed, place and limit the property to that area enclosed West of line C-D and South of line X-Y, shown on the above sketch as Tract 2.
Nevertheless, from a review of all of the expert testimony produced at the trial we are convinced that the evidence overwhelmingly establishes the facts that the description contained in the Dusenbury-Phenis deed of March 9, 1910 in view of the absence of boundary calls and directives utterly fails to definitely identify any specific property located within Section 40. The testimony of Fred N. Shutts, J. C. de Armas, Jr. and O. E. Young, all qualified experts produced by the appellee, Humble Oil and Refining Co., is to the effect that it is impossible for any surveyor to locate the land described therein within the disputed area without first making the changes, additions and substitutions suggested by appellees and as hereinabove related. The expert witnesses for appellant, Earl M. Collier and Guy Seghers, also testified that from the calls and directives contained in said deed standing alone it was impossible to determine the specific land in Section 40 and that the description was meaningless unless boundary calls could be properly added.
The testimony of Dusenbury, a certified surveyor as well as the common author of the litigants, must be considered by us as a repudiation of the contention of appellees that the description contained in the deed of March 9, 1910 covers Tracts 1, 2 and 3, the subject property. He freely admitted that said description, the basis of appellees' title, is so wanting in calls and directives that a person with ordinary sense would not have written such a description to describe the disputed subject property and that any intelligent person reading the document would know that the description therein given could not cover the subject property involved. Yet it is shown that Mr. Dusenbury himself was the sole grantor in said deed. His own opinion of its faulty description was emphatically emphasized when he testified and we quote him: "* * no one but a nitwit would not know that an error was made."
*401 We find no more justification for adding one directive than we do for adding another. Although it is conceivable that boundary calls can properly be added to erase the ambiguity or uncertainty of description contained in some deeds, however, in the instant case in the light of the evidence, the boundary calls suggested by appellees cannot be considered justified.
The interpretation of the description contained in the March 9, 1910 deed vitally affects the interpretation of the exception contained in the December 15, 1910 deed, determining thereby the extent of the acquisition by plaintiff's author in title when he purchased all of fractional Sections 38, 39 and 40, excepting approximately 440 acres allegedly sold to Albert Phenis.
Taking first the contention of appellees that in the event the description of the Dusenbury-Phenis deed of March 9, 1910 should be declared meaningless and devoid of a description with such identity as to be translative of title, then in that event they argue that the Dusenbury-Phenis correction deed of April 18, 1912 clarifies the description and clearly covers the property involved in this suit. We conclude, however, that said correction instrument theretofore detailed can have no validating effect whatever upon the description contained in the March 9, 1910 deed. This is so for the reason that:
(1) the description contained in the March 9, 1910 deed is fatally defective, not possessing the attributes of a deed translative of title;
(2) the exception recited in the acquisition by plaintiff's author in title by deed dated December 15, 1910 must find its force and effect in the March 9, 1910 deed, and said latter deed being fatally defective and not translative of title, the said exception must be ignored and considered as not written;
(3) that Dusenbury having divested himself of all right, title and interest to all of Section 40 and the exception in the December 15, 1910 deed being considered as though not written, the said deed of December 15, 1910 in favor of plaintiff's author in title must be held to have conveyed the entire Section 40, including the part sought to be excepted.
The effect of an exception in a deed when the exception fails to validly identify the property sought to be excepted has long been settled in our jurisprudence.
In the case of Harrill v. Pitts, 194 La. 123, 193 So. 562, 564 there was involved a petitory action wherein plaintiff claimed the W ½ of the SE¼ and the E 28 acres of the NE¼ of the SW¼ of Section 13, Township 23 North, Range 16 West, Caddo Parish, Louisiana. The defendants claimed that plaintiff's description was defective because it described 120 acres by governmental description, giving the quarter section, section number, township number and range, but ended with a reservation of twelve acres which, allegedly, were not properly identifiable. It was contended that the grantee, because of the unidentified reservation of 12 acres, could not locate the 108 acres which were intended to be purchased. In disposing of this contention this Court held that in view of the description giving the quarter section number, township number and range number same was sufficient to identify the conveyance. We further held that if the excepted property could not be located, then the exception was null and void and not the deed itself. In support of the conclusions reached by us we approvingly quoted from Volume 16, American Jurisprudence, page 619, and held as follows:
"`If an exception is not described with certainty, the grantee shall have the benefit of the defect. In other words, the exception, and not the whole deed, is void; and the grantee is invested with title to all the property mentioned in the deed disregarding the exception.'
"The above text is supported by a number of decisions of the Supreme Court of various states.
*402 "The rule on the subject is thus stated in Volume 18, Corpus Juris, pages 347 and 348:
"`An exception should describe the property with sufficient certainty. Uncertainty or vagueness of description renders a reservation void unless there is something in the exception, deed or evidence, whereby it can be made sufficiently certain. * * *
"`A grant is not, however, necessarily vitiated because of the invalidity of an attempted reservation, nor because of an ambiguity in the exception. The fact that an exception is void for uncertainty has the effect merely to make the conveyance operative as to the whole tract, although it has been held that this rule does not apply where there is but a single description which is intended to describe the land conveyed. * * * An exception of a certain number of acres out of the corner of a square tract is sufficiently definite.'
"See, also, 27 R.C.L. 317 and Lange v. Waters, 156 Cal. 142, 103 P. 889, 19 Ann. Cas. 1207, 1209.
"In Southern Iron & Steel Co. v. Stowers, 189 Ala. 314, 66 So. 677, 679, the Court said:
"`Where a deed of bargain and sale on valuable consideration describes an entire tract of land * * * excepting a part, and the description of the part is vague and uncertain, the uncertainty affects the exception only, and that, not the grant, will fail. This results from two principles: That a deed delivered must have effect, if possible; and the bias of presumptive construction is inclined against the grantor who assumes to speak.'"
The Harrill case, supra, was cited in 162 A.L.R. 285, at page 288 et seq., in support of the general proposition of law which is stated as follows:
"The cases are practically uniform in holding that uncertainty of or insufficiency in the description of an area of land which the grantor or mortgagor attempts to except from the operation of a deed or mortgage affects only the validity of the exception and not the validity of the instrument as a whole; accordingly the exception, if so uncertain as to be void, will be ignored and the deed or mortgage will have the effect of conveying the entire tract described including the part sought to be excepted."
In the light of the evidence and law heretofore discussed the description contained in the deed of March 9, 1910 can little avail the appellees in their effort to identify the 440 acres mentioned in the exception contained in the deed of December 15, 1910 by virtue of which plaintiff's author in title acquired all of Section 40. Necessarily, the attempted description of the property sought to be conveyed in the deed of March 9, 1910 and carried as an exception in the deed of December 15, 1910 was so fatally defective and without legal meaning so as to render said exception null and void, thereby vesting in appellant's author in title the ownership of the entire fractional Section 40, Township 14 South, Range 20 East.
Although a deed conveying land must contain a description that identifies the transferred property, there is no specific provision in our Civil Code that sets forth the requisites of an adequate description; but our Courts have developed judicial requirements and have generally established and settled the rule of law in this State that if the description of property in a deed is either erroneous or misleading it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence.
Since the early case of Kernan v. Baham, 45 La.Ann. 799, 13 So. 155, this Court has adhered to the doctrine therein stated that parol evidence to establish identity is allowable, as is likewise parol evidence of possession in aid of a defective or *403 ambiguous description, but this is only in cases where there is a sufficient body in the description to leave the title substantially resting on writing, and not essentially on parol. This same general proposition is restated in Jackson v. Harris, 18 La.App. 484, 136 So. 166, 137 So. 655; and Lemoine v. Lacour, 213 La. 109, 34 So.2d 392.
In the instant case we are constrained to hold that the description contained in the original Dusenbury-Phenis deed of March 9, 1910 is so deficient in boundary calls or directives as to leave the title substantially resting not on what is contained therein but completely on the strength of parol or extrinsic evidence. Were we to resort to such evidence in aid of that which is meaningless in order to identify the property allegedly conveyed, we would be indulging in a rewriting of or a complete reformation of the deed forming the basis of appellees' claim. A distinction can readily be drawn in a case where an erroneous or ambiguous description is sought to be corrected and in a case where the grantor has failed to set out necessary calls, boundaries or directives to identify the property sought to be conveyed. In the former case a reformation of the instrument is always permitted as between the parties and in some cases even as between third parties. But in the latter case a contrary result obtains, not permitting a complete reformation or rewriting of the deed, particularly where the rights of third parties have intervened, as we find here.
Relative to the correction instrument of April 18, 1912, both appellant and appellees contend that the description contained therein is unambiguous, and the trial judge so held, notwithstanding the different interpretations thereof made by the parties hereto. Appellant contends that if such correction deed validly corrected the March 9, 1910 deed, then and in that event the only property conveyed thereby is that designated as Tract 2, whereas appellees contend that by said corrected description all of the disputed land contained in Section 40, Tracts 1, 2 and 3 was conveyed thereby. Therefore, assuming arguendo that this correction was valid as well as unambiguous certainly the rule of law permitting parol and extrinsic evidence would not be applicable. LSA-C.C. Art. 2276; Smith v. Chappell, 177 La. 311, 148 So. 242; Snelling v. Adair, 196 La. 624, 199 So. 782; Doiron v. O'Bryan, 218 La. 1069, 51 So.2d 628. Having previously disposed of the validity of the correction deed, no further analysis of said instrument and relative evidence is required.
Appellees have filed the acquisitive prescription of ten years under LSA-C.C. Art. 3478, which article provides that he who acquires an immovable in good faith and by just title prescribes for it in ten years. Under LSA-C.C. Art. 3479 one of the essential elements to support said acquisitive prescription is that the title shall be legal, and sufficient to transfer the property. It necessarily follows that where a deed is fatally defective as a record title it cannot form the basis of a ten-year prescriptive title.
In the case of McHugh v. Albert Hanson Lumber Co., 145 La. 421, 82 So. 392, 394, the defendant claimed title by the prescription of ten years. The defect or absence of description in the title was held to be fatal to the plea. In so holding, we said: "For one of the requisites of the prescription of 10 years is a title translative of the property * * *; and in order to be translative of the property the title must identify it; and this, the tax collector title of defendant does not do. * * *"
In the case of Bendernagel v. Foret, 145 La. 115, 81 So. 869, 870, we said:
"We do not consider it sufficient, to support a plea of prescription of 10 years, that the description in the deed relied upon might be construed to include the land in question. It is necessary, to sustain the plea, that the deed relied upon is prima facienot merely that the purchaser believed it to betranslative of the property *404 in question. As to the title, of course, it is sufficient, to sustain the prescription of 10 years, that the purchaser, in good faith, believed that his vendor owned the property; but, as to the deed being upon its face translative of the supposed title, the description must include the property in question."
In the case of Castera's Heirs v. New Orleans Land Co., 125 La. 877, 51 So. 1021, 1023, in rejecting a ten-year prescriptive plea, we said: "If one takes possession of a tract of land under a deed which does not contain a description sufficiently correct to enable an average surveyor, in point of ability, to identify it, he cannot claim to be a possessor in good faith. * * *
"It is necessary that the description should be sufficiently complete to serve the purpose of identification."
See, also, Salmen Brick & Lumber Co., Ltd. v. H. Weston Lumber Co., 144 La. 186, 80 So. 249; Harang v. Gheens Realty Co., 155 La. 68, 98 So. 760; Bayard v. Baldwin Lumber Co., Limited, 157 La. 994, 103 So. 290; Ball v. Price, 168 La. 226, 121 So. 752; and Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442.
Accordingly, since we are convinced that the deed of March 9, 1910 was hopelessly defective and was, therefore, not sufficient to be translative of title, it cannot form the basis for a ten-year prescriptive title.
The pleas of estoppel, ratification and acquiescence are based upon the contention that plaintiff and his authors in title, in various transactions subsequent to the acquisition of December 15, 1910 consistently recited the exception of "approximately 440 acres previously sold to Albert Phenis," and that these recitals have the effect of a recognition of defendants' ownership in and to said acreage. These pleas are equally unimpressive, for one can never be divested of his title to property except in the manner prescribed by law. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42; Gibson v. Pickens, 187 La. 860, 175 So. 600; and Snelling v. Adair, supra.
This leaves for our consideration the remaining contention of appellees that the acreage call of 440 acres contained in the March 9, 1910 Dusenbury-Phenis deed makes the otherwise defective description perfectly clear and unambiguous. In other words appellees contend that even were they to concede that the description by calls and bounds would serve completely different interpretations and would not encompass all of the property involved in this litigation, that the mere presence of the acreage call in said deed is sufficient to establish their title in and to Tracts 1, 2 and 3.
It is obvious that Section 40 contains acreage far in excess of 440 acres. Were we to employ the acreage call alone we would be at a loss to know whether this acreage should be confined within the limits of Section 40 and, if so, what specific location therein, or confined within Section 39, or located within both. This being true, it is manifest that in the absence of directives and proper calls to fix the location of the acreage with identifiable definiteness and certainty there is no justification for us to arbitrarily place the said acreage within Section 40 and segregate from said Section Tracts 1, 2 and 3 shown on the above sketch as a valid and legal answer to the said acreage call.
It is a well-established rule that the identification of land by acreage or quantity is the weakest, lowest ranking of all the enumerated standards or guides in describing property sought to be conveyed and, in the absence of specific and definite calls which afford the identity and location of the property, mere acreage calls alone without other means of identification, properly resorted to, fail to comply with rules applicable to the requirements of descriptions translative of title. See Bender v. Chew, 129 La. 849, 56 So. 1023; Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, *405 92 So. 855; City of New Orleans v. Joseph Rathborne Land Co., Inc., 209 La. 93, 24 So.2d 275.
In his petition plaintiff alleges that he is further entitled to judgment forthwith ordering the Humble Oil & Refining Company, one of the appellees herein, to release and relinquish its possession of the property here involved and that said Humble Oil & Refining Company be ordered to render him a full accounting for any and all oil, gas and other minerals which it may have removed from said property.
Accordingly, for the reasons assigned, it is ordered that the judgment of the trial court be and the same is hereby annulled, reversed and set aside. It is further ordered that there be judgment in favor of the estate of Jacques E. Blevins, appearing through the duly qualified and authorized testamentary executrix, recognizing it to be the true and lawful owner of and as such entitled to the immediate possession, with all right, title and interest, in and to the following described property:
"Tract No. 1: That portion of Fractional Section 40 lying West of the Section line "between Section 17 and Section 18, produced, and North of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River.
"Tract No. 2: That portion of Fractional Section 40 lying West of the Section line between Section 17 and Section 18, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River.
"Tract No. 3: That portion of Fractional Section 40 lying East of the Section line between Section 17 and Section 18, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River."
It is further ordered that the Humble Oil & Refining Company release and relinquish its possession of the above described property to said owner thereof and that said Company render unto said owner a full accounting for any and all oil, gas and other minerals which it may, at any time, have removed therefrom.
It is further ordered that this cause be remanded to the lower court for a proper adjudication of all rights of the parties herein in accord with this decree.
All costs of this appeal to be paid by the defendants-appellees.
HAMITER, McCALEB and HAWTHORNE, JJ., dissent.
McCALEB, Justice (dissenting).
I am in accord with the views expressed in the dissenting opinions of Justices HAMITER and HAWTHORNE.
The primary question for decision, it seems to me, is a simple oneindeed, one which readily answers itself adversely to plaintiff by an application of and an adherence to our substantive and procedural law.
This being a petitory action, plaintiff must succeed on the strength of his own title and not on the weakness of that of his adversary. Now, what is plaintiff's title and how is it derived? He has no paper title to the acreage claimed by him in this suit. Indeed, title to this acreage was specifically withheld and excepted from his title in the deed under which he, perforce, *406 claims. But he nevertheless asserts that he acquired ownership of the excepted property anyway. And how? Allegedly by reason of the circumstance that the acreage specially excepted by his vendor (because it had been previously sold to defendants' author in title) was faultily described in the conveyance to defendants' author in title. It is said this defective description produced unusual consequences (1) it prevented defendants' author in title from acquiring the property he bought and (2) it brought about the vesting of title in plaintiff, even though the grantor of his author in title excepted the 440 acres in the deed. How did this transfer occur? This, says plaintiff, was made possible by the fact that the exception is too vague to describe the land not conveyed and, therefore, he (plaintiff) became, ipso facto, the owner in virtue of the common-law doctrine adverted to in the case of Harrill v. Pitts, 194 La. 123, 193 So. 562, 565.
This claim of title, in my opinion, is illusory and wholly unsupported by any sound principle in law or reason. If such be the jurisprudence in other jurisdictions, it has no place in our civil law and should be emphatically rejected. However, as an examination of the authorities cited in Harrill v. Pitts, which is quoted from at length in the majority opinion, will readily disclose, this is not the rule at common law. True, there is a rule to the effect that, if an exception or reservation contained in a deed does not describe the excepted property with reasonable certainty, so that the excepted property can be identified "either through the description in the deed itself or by means of extrinsic, competent evidence" (see Harrill v. Pitts), the exception or reservation will fall and not the whole deed. But that doctrine is wholly inapplicable to this case as I shall hereafter demonstrate.
As the authorities cited in Harrill v. Pitts will show, the doctrine, which has been misapplied in this case, is founded on sound logic but is necessarily of limited scope. It has pertinence only and its use should be restricted to cases, like Harrill v. Pitts, in which the grantor or his successors are challenging his grantee's title, claiming its entire invalidity because of an ambiguity of description in an exception or reservation in the deed. In such matters, the doctrine is that the deed must stand and it is only the exception that fails, the grantee obtaining the benefit of the failure. Why is this so? The cogent answer is given in Southern Iron & Steel Co. v. Stowers, 189 Ala. 314, 66 So. 677, 679 (quoted from in Harrill v. Pitts) where the court said:
"This results from two principles: That a deed delivered must have effect, if possible; and the bias of presumptive construction is inclined against the grantor who assumes to speak."
In other words, this doctrine may be used as a defense by the grantee in instances where the grantor is attempting to defeat the conveyance, for then the principles upon which the doctrine rests are applicable, those principles, being that justice requires, where possible, to uphold deeds rather than destroy them and, further, that a grantor who seeks to strike down his own transfer is not looked upon with favor by the courts.
But how, in the case at bar, could these principles come into play? This is not a case in which the vendor, or anyone claiming under the vendor, is disputing plaintiff's title on the ground that the 440-acre exception contained in his deed is so uncertain that the property conveyed to plaintiff in Section 40 cannot be located. On the contrary, it is conceded that plaintiff owns all of the acreage he bought and paid for and no one assails his title to that property.
Therefore, plaintiff is not in a position to employ the doctrine he invokes in this case; he is not using it as a shield to uphold his own title to the land he bought, but as a sword to acquire land excepted from the property he purchased. Thus, he would apply the rule in reverse. But this cannot and should not be permitted forfirst, because, *407 in a reverse of positions, the legal principles on which the invoked rule are founded (upholding the deed and bias of construction against the grantor) necessarily disappear and, when the reason for a rule is not present, there is no basis for its application. Secondly, as plaintiff in a petitory action, this plaintiff must have a title to the property he claims. Since he has no title, he should not be allowed to create a pseudo one to property specifically excluded from his deed, which is not under attack.
There are many more reasons why this action should be declared groundless, the most important ones being covered in the opinions of the other dissenting Justices. Hence, further comment on my part would be superfluous.
I respectfully dissent.
HAMITER, Justice (dissenting).
How this plaintiff can succeed on his title, which expressly and specifically excepts from its coverage the property in controversy, is beyond my comprehension. The majority holding that he should be permitted to do so plainly does extreme violence to the well-recognized legal principle, long established in our jurisprudence and enunciated in countless opinions, that for success in a petitory action the plaintiff must rely on the strength of his own title and not on the weakness of his adversary. Emerson v. Cotton, 209 La. 1003, 26 So.2d 16; Parham v. Maxwell, 222 La. 149, 62 So.2d 255 and Thurmon v. Hogg, 225 La. 263, 72 So.2d 500. See, also, Code of Practice Article 44, which recites: "The plaintiff in an action of revendication must make out his title, otherwise the possessor, whoever he be, shall be discharged from the demand."
The majority holding appears to be predicated almost wholly on our decision in Harrill v. Pitts, 194 La. 123, 193 So. 562. But clearly that case is inappropriate, for the excepted land therein was not in contest as is the excepted property here.
In any event the principal defendant herein has a good and valid title to the disputed land, as against all the world, by virtue of the prescription of ten years acquerandi causa provided for in Revised Civil Code Articles 3478 and 3479. The evidence is overwhelming that such defendant has been in actual, continuous, peaceable and public possession of the entire tract as owner since prior to 1926; and unquestionably its acquisition of the property from Ray C. Powell on July 23, 1915 was accomplished in good faith and by a legal title translative of ownership.
I respectfully dissent.
HAWTHORNE, Justice (dissenting).
Plaintiff in this petitory action seeks to be recognized as the owner of a tract of land containing 408 acres in Section 40, Township 14 South, Range 20 East, St. Charles Parish, Louisiana, from which oil is being produced. The parties at interest in this litigation are, on the one part, Jacques E. Blevins, plaintiff, and his lessees, Louis J. Roussel and Republic Petroleum Corporation, of which Roussel is president, and, on the other part, defendant Manufacturers Record Publishing Company; its mineral lessee, Humble Oil & Refining Company, and numerous mineral and royalty owners. After trial the lower court dismissed plaintiff's suit, and the instant appeal was taken.
According to the majority opinion the asserted titles of both plaintiff and defendant find their source in a common vendor, A. T. Dusenbury. On March 9, 1910, Dusenbury sold to Albert Phenis, defendant's author in title, a tract of land in Sections 40 and 39, Township 14 South, Range 20 East, containing 442 acres more or less. The tract of land conveyed was described by metes and bounds. Later two correction deeds were executed by vendors of the property in defendant's chain of title. By mesne conveyances defendant Manufacturers Record Publishing Company acquired the property in controversy on July 23, 1915, under the *408 same description as that contained in the correction deeds.
On December 15, 1910, about nine months after the sale to Phenis, Dusenbury, the common vendor, sold all of Fractional Sections 38, 39, and 40 to Louisiana Farm Land Company, Ltd,[1] but the land previously sold to Phenis was expressly excepted from this sale by the following provision in the deed to Louisiana Farm Land Company:
"There is also excepted in Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act passed before William Renaudin, Notary Public, and recorded in the Conveyance Records of St. Charles Parish, in Book ___, Page ___."
In every subsequent deed conveying Fractional Sections 38, 39, and 40, including the deed to plaintiff, the 440 acres previously sold to Albert Phenis were expressly excluded.
It is abundantly clear from an examination of the various deeds that plaintiff has no record title to the 408 acres here in controversy. In this petitory action he is attempting to have himself declared the owner of these 408 acres by virtue of an expressed exception or exclusion in his own deed.
It is well settled in the jurisprudence of this court that in a petitory action the plaintiff in order to recover must rely on the strength of his own title and not on the weakness of his adversary's. Smith v. Chappell, 177 La. 311, 148 So. 242, and authorities there cited.
By the majority holding plaintiff here is being recognized as owner of the tract in question under an exception in his deed of acquisition by which that tract was expressly excluded. In other words, plaintiff, who has no record title to the disputed tract, in this petitory action is being recognized as the owner of the land although the land was expressly excepted in his deed and in the deeds of all his authors in title back to the common vendor of both defendant and plaintiff.
The majority opinion states: "* * * the attempted description of the property sought to be conveyed in the deed of March 9, 1910 [the deed to Phenis, defendant's author in title] and carried as an exception in the deed of December 15, 1910 [the subsequent deed to plaintiff's author in title] was so fatally defective and without legal meaning so as to render said exception null and void, thereby vesting in appellant's author in title the ownership of the entire fractional Section 40, Township 14 South, Range 20 East."
From this statement it is apparent that the majority of the court begins by examining defendant's title and from this examination concludes that the description found in his deed is fatally defective. In other words, what the majority is saying is that the deed to Phenis to the 400-acre tract in Sections 39 and 40 conveyed nothing. The majority then turns to the deed from Dusenbury by which he conveyed all of these fractional sections and in which it was stated: "There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act * * *". From this the majority concludes that the exception was null and void, and that plaintiff's author in title was therefore vested with the ownership of the entire Fractional Section 40.
If by this process the majority has found an apparently valid title in the plaintiff so as to put the title of defendant at issue, then the defendant should be permitted to prove by extrinsic evidence what property was actually conveyed to its author in title by the March, 1910, deed. The majority, however, haserroneously in my opinion denied defendant this right and allowed *409 plaintiff to establish his title solely on the weakness of the defendant's title.
It is a well-settled principle of law that "a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property can be located. * * * The maxim is `that is certain which can be made certain;' and the Courts lean against striking down a deed for uncertainty of description of the land conveyed, and a liberal rule of construction will be applied to uphold the conveyance". 16 Am.Jur. 585-586, Deeds, sec. 262; see 26 C.J.S. Deeds § 30, p. 640; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Smith v. Chappell, 177 La. 311, 148 So. 242; White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15; Snelling v. Adair, 196 La. 624, 199 So. 782; Hargrove v. Hodge, La.App., 121 So. 224.
In Harrill v. Pitts, 194 La. 123, 193 So. 562, 565, the very case relied on by the majority opinion, this court said:
"Courts are always liberal in construing the description of property in deeds, so as to sustain, rather than defeat, the conveyance. 16 Am. Jurisprudence, 585, 586; 18 C.J. 180, 181.
"The rule that the description in a deed will be sustained whenever the instrument affords any description by which the property can be identified, either through the description in the deed itself or by means of extrinsic, competent evidence, has been frequently approved by this Court."
In Snelling v. Adair, supra [196 La. 624, 199 So. 787], it was stated:
"It is a well settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence * * *."
I concede, as I must, that the defendant's deeds contain an inaccurate or faulty description of the property, but this description is not so inaccurate or faulty as to be actually misleading. Under these circumstances extrinsic evidence to identify the property should be permitted. If a description is so misleading that it actually describes some property other than that sold, such extrinsic evidence is not admissible, for in such a case this evidence would not make the description certain but would actually change the record. See White v. Ouachita Natural Gas Co., supra. In the instant case, however, the description in defendant's deed is not so misleading that it actually describes accurately some other property.
This record shows that neither plaintiff nor any vendor in his chain of title, nor any third party, has actually had adverse physical possession of any portion of the property acquired by defendant. Moreover, defendant and its predecessors in title were recognized as owners by everyone who dealt with the property, and even by plaintiff himself, who in the year 1939 attempted by letters to purchase from this defendant a royalty under the tract. In fact, defendant's title remained unchallenged from 1910, the date of the Dusenbury sale, until some time in 1940, when plaintiff entered into a contract with a former property owner in the area to reacquire for that former owner, by suits if necessary, large tracts of land in the area. Although plaintiff's authors in title sold timber and granted trapping and mineral leases in Sections 39 and 40, and the rights granted under these contracts were exercised, there is no showing that any of these vendees or lessees exercised or sought to exercise their rights over any portion of the 400-acre Albert Phenis tract. Evidently they knew the location on the ground of this tract.
*410 On the other hand, from 1910, the date of the Dusenbury sale, until the date of the trial defendant and its authors in title have been assessed with, and have paid, the taxes on the disputed property. For many years defendant and its predecessors have been in actual physical possession of the tract sold to Phenis containing 1,000 acres, of which the tract here in dispute forms a part.[2] In 1916 the then record owner evicted a tenant from a small area of this property for failure to pay rent. In 1923 and 1924 defendant sold the timber on the tract and caused a survey to be made, and the timber sold was cut and removed from the tract. Defendant also granted trapping leases under which its lessees have trapped over the land from 1934 to the present time.
In 1938 it leased the property to the defendant Humble Oil & Refining Company, and this lessee caused a survey to be made by which the property was located on the ground. This lessee dug a canal on the property sufficiently large to accommodate a barge drilling rig, and conducted dredging operations on the property. Numerous wells were drilled on the property by Humble, and during its drilling activities camps were constructed comprising residences, garages, boathouses, offices, tool platforms, etc. Numerous drilling rigs were erected which operated around the clock. Tank batteries and pipelines were constructed on the property. In the course of these activities Humble actually drilled on the tract 11 producing oil wells. This lessee's activities on the property were still in progress at the time the case was tried in the court below.
A. T. Dusenbury, who sold the tract in question to Albert Phenis, defendant's author in title, in 1910, testified in this case on behalf of defendant and explained the facts and circumstances surrounding the making of his deed to Phenis. It is beyond question that as between these two the identity and location of the property were well known. In a conference between Phenis and Dusenbury it was decided what property was to be conveyed and just where the 442 acres were to be located in Sections 39 and 40, and the map used by Dusenbury in preparing the deed was actually filed of record in the instant case. Phenis or his successors in title went into actual physical possession of the 442 acres in Sections 39 and 40. This evidence establishes conclusively what property Dusenbury intended to convey to Phenis, and what Phenis intended to acquire.
That the property intended to be conveyed could be definitely located on the ground is established by the fact that in the instant case Dusenbury, himself a surveyor, located and identified it on the ground by actual survey. The record also shows that other engineers and surveyors identified and located on the ground the land which Dusenbury intended to describe and convey.
I can reach no other conclusion than that the description in the deed, with the aid of extrinsic evidence, is sufficient to establish what property Dusenbury intended to convey to Phenis. Moreover, I think the description in the deed furnishes a means of identification by which the property conveyed can be located with the aid of extrinsic evidence.
The trial judge was of the same view, for in his reasons for judgment he stated:
"The Court, accordingly, finds as a fact that defendant, Manufacturers Record, possessed the disputed property as owner by evicting Adam Sumler in 1916, by inspection and survey through its agent, A. T. Dusenbury in 1923, by the sale of timber to and the cutting of timber by its vendee, Iona Tie and Timber Company, in XXXX-XX-XX, by the trapping activities of its lessee, Felix Dufrene, from 1934 to the present *411 time and by mineral exploration and development of its lessee, Humble, from 1938 to date. All of these facts constituted possession which was `continuous and uninterrupted, peaceable, public and unequivocal,' as provided in Article 3487 of the Civil Code, and the Court finds as a fact that defendants did exercise possession of this nature during the times covered by the testimony.
"From a careful hearing of the expert testimony and observation of the witnesses on direct and cross-examination, the Court concludes that the evidence in favor of the sufficiency of the descriptions by use of competent evidence is clear and convincing. In addition, the Court finds it difficult, if not impossible, to reconcile the inability of plaintiff's expert witnesses to locate the disputed property with the total absence of any testimony that any one of the numerous persons shown by the record as having dealt with the property in question experienced any difficulty whatever in locating the 440-acre Albert Phenis tract. On the contrary, the record is replete with testimony of witnesses who experienced no difficulty whatever in locating and exercising the rights acquired on the Albert Phenis 440-acre tract of land." (Italics mine.)
The majority in this case relies on the case of Harrill v. Pitts, 194 La. 123, 193 So. 562, and certain pronouncements quoted there from Corpus Juris, American Jurisprudence, and Ruling Case Law.
In the Harrill case plaintiffs argued that a deed was defective "because of the failure to properly describe the property. Their contention is that the description of the property is defective because the deed describes 120 acres by governmental descriptions * * * ending with a reservation of 12 acres therefrom, but does not describe the excepted 12 acres and, therefore, the grantee cannot locate the 108 acres which were intended to be purchased". This court found that the sale of 108 acres was a valid sale. In the course of that opinion the court stated that if an exception in a deed is not described with certainty, the exception and not the whole deed is void. This statement was dicta in that case, as the court found that the 12 acres excepted were adequately identified and properly described, and in the course of the opinion was careful to point out that "The rights and title of the owner of these twelve acres are not in dispute, in this case". In the instant case the title to the tract excepted in plaintiff's deed is in dispute. Moreover, plaintiff here is not contending, as were plaintiffs in the Harrill case, that the deed which contains the exception is null and void in its entirety. Under these circumstances I do not think this case can be accepted as authority for the conclusion reached by the majority in the instant case.
The plaintiff in the case at bar is being allowed to recover a 408-acre tract for which neither he nor any person in his chain of title ever paid one dime. This is made clear by the fact that at the time Truck Farm Land Company, Ltd., joined by Dusenbury sold the land to Louisiana Farm Land Company, Ltd., the conveyance was made at so many dollars per acre, and the purchaser paid only for the actual number of acres called for in his deed. And as we have said, this act as well as all others in plaintiff's chain expressly excepted the Albert Phenis tract.
The judgment appealed from should be affirmed.

On Rehearing
TATE, Justice ad hoc.
By this petitory action the plaintiff[1] claims title to approximately 408 acres of *412 land situated in Section 40, T. 14 S., R. 20 E., St. Charles Parish. The principal defendants are the Manufacturers Record Publishing Company, which allegedly acquired title to the property in question by recorded deed of 1915, and the Humble Oil and Refining Company, Manufacturers' mineral lessee.[2] (For convenience in discussion, reference to the "defendant" or to "Manufacturers" will include where indicated not only Manufacturers itself, but also those defendants whose interest derives from this defendant landowner.)
The original opinion of this court granted judgment in plaintiff's favor, reversing the district court's dismissal of the suit. All issues of this appeal have been reconsidered upon this rehearing.
The facts are fully stated in our former opinion and will not be reiterated except where necessary to clarify the discussion.
The rival title claims of the parties to this action stem respectively from two sales in 1910 of portions of a parent tract by Allan T. Dusenbury, the common author of the titles of both plaintiff and defendants. It is unnecessary to deraign title back beyond Dusenbury's acquisition of the parent tract at tax sale in 1908, for, where adverse claimants to property trace their titles to a common source, neither can attack the title of their common author from whom both claim. Pecot v. Prevost, 117 La. 765, 42 So. 263; Rocques' Heirs v. Leveque's Heirs, 110 La. 306, 34 So. 454; Bedford v. Urquhart, 8 La. 234.
Plaintiff's ancestor in title, the Louisiana Farm Land Ltd., acquired approximately 15,000 acres of land from Dusenbury by deed dated December 15, 1910, including the following described tract in T. 14 S., R. 20 E:
"All lots or frc. Secs. 38, 39 and 40 except [certain lots or tracts not here in question].
"There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act passed before William Renaudin, Notary Public, and Recorded in the Conveyance Records of St. Charles Parish, in Book ___, Page ___." (Italics ours.)
The substantial issue of this appeal concerns whether the exception above italicized excepted from acquisition by plaintiff and his ancestors in title the tract of land here in dispute; or, rather, whether as plaintiff in this petitory action Blevins has borne his legal burden of proving that all or part of said tract did not fall within the exception from such acquisition of his predecessors in title.
Defendant Manufacturers, which admittedly was in possession of the disputed tract in 1943 at the institution of judicial proceedings concerning plaintiff's claim of title thereto, contends that the disputed tract containing approximately 408 acres of land in Section 40 forms (together with 32 acres in Section 39) the tract excepted from acquisition by plaintiff's ancestor in title as having been previously sold by Dusenbury to Phenis.
This prior deed from which Manufacturers deraigns its title was executed on March 9, 1910, before William Renaudin, Notary Public. The description in this conveyance of certain land by Dusenbury to one Albert Phenis for the sum of $442 was purportedly corrected by a correction deed between these same parties, dated April 18, 1912, and shortly thereafter also recorded in the conveyance records. By a deed of July 23, 1915, Manufacturers acquired from an intervening purchaser from Phenis the property originally sold to Phenis according to its corrected description, as follows:
"That portion of lot or fractional section 40 lying west of the section line between Sections seven (7) and eight (8) above, *413 produced and south of a line drawn west from a point on the center line of the Morgan's Louisiana & Texas RR Co., said point being 600 feet North of the intersection of said railroad, with Bayou Saut D'Ours, [and that portion of lot or section thirty-nine (39) bounded on the north by the above described line on the east by the right of way of the said Morgan's Louisiana and Texas R.R., on the South by Bayou Saut D'Ours, and on the west by section 40], all in T. 14 S., R. 20 E., Southeastern Land District of Louisiana, west of the Mississippi River, and containing Four hundred and forty-two (442) acres, more or less * * *." (Italics and brackets[3] added by this court.)
The italicized portion of the description is the basis of defendant's claim of title to the disputed tract.
Primarily, the opposing parties each claim title to the property through conveyances from Dusenbury and his assignees. It should be emphasized here that there is no claim by either plaintiff or defendant to any portion of the tract by prescriptive title resulting from thirty years' adverse possession without title, LSA-C.C. Arts. 3499, 3548, as it is conceded that neither party had possession thereof for thirty years prior to interruption by suit.
Plaintiff contends that: (a) He acquired by mesne conveyances from Louisiana Farm Land Limited whatever portion of Section 40 this company acquired from Dusenbury by its deed of December 15, 1910, which included the property here in question since the attempted exception of property previously sold to Phenis was ineffectual as unidentifiable because the description in the prior 1910 sale by Dusenbury to Phenis was meaningless; (b) alternatively, if the Dusenbury-Phenis correction deed of 1912, recorded subsequent to Louisiana Farm Land's acquisition from Dusenbury of his remaining interest in Section 40, can be held to affect plaintiff's title, then that defendant's title is limited to the property clearly and unambiguously described by such deed, namely, the 183 acre tract referred to as "Tract 2" in the pleadings and evidence (and thereas denoted on the plats incorporated in the original and present opinions of this court).
Defendant's contrary contentions may be summarized as follows: (a) That since this is a petitory action, plaintiff may not recover on the weakness of defendant's title even conceding that the original Phenis deed upon which defendant's title is based is meaninglessbecause his own title excepts approximately 440 acres previously sold to Phenis, which plaintiff cannot prove may not have included the property here in dispute; (b) that in any event the descriptions of both the 1910 and 1912 Phenis-Dusenbury deeds describe the entire disputed area of Section 40, and, if ambiguous, by extrinsic evidence the intent of the parties to do so may be proved.
Simply stated, since there is no prescriptive title by adverse possession concerned, the primary question before us is to determine which party has title to the property in dispute. However, Blevins may not recover the property simply because defendant lacks title to it, since, in a petitory action such as the present, the plaintiff out of possession must make out his title to the property claimed and must recover upon the strength of his own title and not upon the weakness of the defendant possessor's. Articles 43 and 44 of the Code of Practice; Albritton v. Chilers, 225 La. 900, 74 So.2d 156; Thurmon v. Hogg, 225 La. 263, 72 So.2d 500; Parham v. Maxwell, 222 La. 149, 62 So.2d 255; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Dugas v. Powell, 197 La. 409, *414 1 So.2d 677; Cook v. Martin, 188 La. 1063, 178 So. 881; Smith v. Chappell, 177 La. 311, 148 So. 242.
Before discussing the respective contentions of the parties, we think it appropriate to restate some fundamental principles regarding the acquisition of title to immovables in Louisiana, subject to which all parties herein acquired their alleged interest in the lands presently in question.
In the first place, "Every transfer of immovable property must be in writing * * *." Article 2275 of the LSA-Civil Code. "All sales of immovable property shall be made by authentic act or under private signature * * *." Article 2440 of the LSA-Civil Code. In accordance therewith, it is well settled that parol evidence may not be used to establish title to immovables (Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So. 2d 879; Lemoine v. Lacour, 213 La. 109, 34 So.2d 392; Ceromi v. Harris, 187 La. 701, 175 So. 462; Ruth v. Buwe, 185 La. 204, 168 So. 776); nor, in the absence of a written instrument, may title to immovables be created by estoppel. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635; Gibson v. Pickens, 187 La. 860, 175 So. 600. (Italics ours.)
Further, "No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated." Article 2264 of the LSA-Civil Code. See, also, Article 2253. "All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto * * *." Article 2266. Under this principle, and since the famous leading case of McDuffie v. Walker, 125 La. 152, 51 So. 100, it is firmly established in our jurisprudence that a third party purchaser may rely upon the conveyance records and is not bound or barred by unrecorded claims against the property purchased, even though he has actual notice thereof gained from outside the records. Haynes v. King, 219 La. 160, 52 So.2d 531; Humphreys v. Royal, 215 La. 567, 41 So.2d 220; Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321; Westwego Canal & Terminal Co. v. Pizanie, 174 La. 1068, 142 So. 691; Coyle v. Allen, 168 La. 504, 122 So. 596; Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528.
As we recently restated in Wells v. Joseph, 234 La. 780, 101 So.2d 667, 669, quoting from Martin v. Fuller, 214 La. 404, 37 So.2d 851, 856, "Unlike the rule at common law, it is the public policy of this state that in order to affect third parties, all transactions touching upon or affecting title to real or immovable property must be recorded. As stated in the case of Baker v. Atkins, 107 La. 490, 32 So. 69, 70, `there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record'." [4]
Having in mind these fundamental principles regarding acquisition and proof of title in Louisiana to immovables, so strictly adhered to and founded upon our public policy and the social purpose of assuring stability of land titles and entitling *415 purchasers and others in land transactions to rely upon the public records, we think plaintiff correctly urges that, in determining what is excepted from his acquisition by the exception clause in question, he and those in his chain of title are entitled to rely upon what the conveyance records show Phenis and those claiming from Phenis acquired from Dusenbury in 1910; and that what the conveyance records show to have been excepted from plaintiff's acquisition cannot be enlarged or differed by extrinsic evidence contradictory thereof.
If this were not so, when many years later these inconsequential and unoccupied swamp lands became of great value through the possibility of mineral-exploitation, those claiming title on the basis of the clause specifically excepting certain otherwise unidentified acreage previously sold to a prior purchaser couldin violation of the public policy expressed by the above-stated principles which recognize the historic unreliability of such extrinsic hindsight or self-serving evidenceselect for their own ownership such portions of the property acquired by plaintiff as indicated by [5] the vague remembrances of witnesses many years later, unrecorded and self-serving correspondence and evidence concerning alleged dealings with the property, or theoretical deductions of highly paid employees or experts as to what was allegedly intended to have been excepted, irrespective of what the recorded deeds show to have been actually previously conveyed to their own predecessor in title.
Likewise, in view of these fundamental principles, we regard as untenable defendant's contention that the plaintiff cannot carry his burden of proving title in this petitory action to the acreage sought in Section 40 simply because his chain of title excepts from acquisition "approximately 440 acres sold to A. Phenis"[6] and without any reference at all to what the conveyance records show to have been actually sold to Phenis. If the otherwise unidentifiable exception by itself thereby defeats plaintiff's title to the land presently claimed by him in Section 40, it defeats his claim against a possessor to any portion of Sections 39 and 40 (for the same argument may be made that "approximately 440 acres" in Sections 39 and/or 40 is excepted from his acquisition which might include any tract sought therein so that plaintiff cannot prove his own title thereto), in contravention of the legal principle noted in our original opinion that an exception from a sale of unidentifiable property, rather than voiding the entire conveyance deed, is itself void, cf. Harrill v. Pitts, 194 La. 123, 196 So. 562.
*416 Or, if defendant's contention is interpreted to urge that extrinsic evidence is available to prove that the exception included more or other than what the conveyance records show to have been excepted from plaintiff's acquisition by the previous conveyance thus specifically excepted, such contention flouts the above-summarized basis rules of Louisiana law that title to immovables may not be created by parol or other extrinsic evidence, nor written title thereto destroyed by such evidence, and that the claims of third persons who acquired property on the basis of recorded title thereto cannot be defeated by unrecorded claims or equities. For the same reason, we find inapplicable common-law jurisprudence cited to us to the effect that exception clauses per se render deeds ambiguous, so that as even against subsequent purchasers in the chain of title extrinsic evidence not of record may be offered to show what originally was conveyed and what originally was excepted.
In referring to the conveyance records to determine what land had been acquired by Albert Phenis from Dusenbury so as to be excepted from the acquisitions by plaintiff's ancestors in title, in our original opinion we found the description in the 1910 deed to be so completely defective as to be meaningless, so that proof of what was intended to be conveyed thereby would rest the title essentially upon parol and not substantially upon the writing, in contravention of law. Cf. Lemoine v. Lacour, 213 La. 109, 34 So.2d 393. We further held that since the identity of the property excepted could not be identified as of 1910 when plaintiff's ancestor in title acquired the property, then the exception rather than the deed itself was void. Harrill v. Pitts, 194 La. 123, 193 So. 562.
Our further consideration of this holding has not convinced us that we were in error, were we solely concerned with what plaintiff's predecessor in title had acquired by the deed of 1910. But under our present view of the matter, and upon our reconsideration of the entire record and all acquisitions involved, we do not believe that we are called upon to decide this point, for the present plaintiff's title stems not only from the 1910 deed but also from subsequent deeds, including that of 1917 by his immediate predecessor in title in which was specifically excepted from the acquisitions of Sections 39 and/or 40 "approximately 440 acres sold to A. Phenis."
A third party in dealing with property is charged with knowledge revealed by the recorded instruments affecting the property. Wells v. Joseph, 234 La. 780, 101 So.2d 667; Wise v. Watkins, 222 La. 493, 62 So.2d 653; Otis v. Texas Co., 153 La. 384, 96 So. 1. In the Wise case this court said with reference to a similar situation: "The defendants [herein, the plaintiff] cannot single out a single one instrument on the public records and disregard the other instruments * * *. The records as a whole must be taken into consideration and they are bound by what they reveal." [222 La. 493, 62 So.2d 656.]
The evidence reflects that the only recorded conveyance of lands to Albert Phenis in Sections 39 and 40 was the deed from Allan T. Dusenbury in 1910, as corrected in 1912. The conveyance records of St. Charles Parish further reflect that from Phenis through an intervening vendee the present defendant acquired by the corrected description whatever land in Sections 39 and 40 had been purchased by Phenis. As will shortly be shown, the corrected description plainly and unambiguously describes a portion of the land in Section 40 presently claimed by plaintiff. Plaintiff's acquisition was thus subject to this previous deraignment of clearly described land of which he was put on notice by specific reference thereto in his chain of title.
Plaintiff's contention that his title stemming from the claim of his ancestor to the entire tract arising from his alleged acquisition *417 thereof in 1910 could not be defeated or limited by his ancestor's vendor's subsequent execution of the correction deed in 1912 overlooks, in our opinion, that the ancestor's claim to the entire tract does not arise because no property was intended to have been excepted by the clause specifically excepting the land previously sold to Phenis from the acquisition, but because no competent evidence was admissible to prove what property was accepted.
Phenis' acquisition from Dusenbury by the deed of 1910 (conceding the description therein to be meaningless) was not, as between the parties, absolutely void. By correction deed or timely action to reform an original deed, the description may be corrected as between the parties to reflect their true intent. Agurs v. Holt, 232 La. 1026, 95 So.2d 644; Haas v. Opelousas Mercantile Co., 197 La. 500, 2 So.2d 3; Reynaud v. Bullock, 195 La. 86, 196 So. 29; Broussard v. Succession of Broussard, 164 La. 913, 114 So. 834; Coleman v. Thibodaux, 119 La. 471, 44 So. 474. Such correction relates back, as between the parties, to the date of the original deed. Cf. Barret v. Hickman, La.App. 2 Cir., 3 So.2d 901, certiorari denied; 26 C.J.S. Deeds § 94, p. 854; 16 Am.Jur. Deeds Sec. 15, p. 591, Sec. 336, p. 629. Of course, as the above-cited jurisprudence specifically indicates, such deed may not be corrected to the prejudice of third persons. W. B. Thompson v. McNair, 199 La. 918, 7 So.2d 184.
Under the particular facts of the present case, we are unable to say that plaintiff can claim that his own title as a third person was prejudiced by execution of the 1912 correction deed. It was executed at an unsuspicious time prior to the acquisition by his own immediate vendors and long prior to his own acquisition. He was not, nor so far as the record shows were his immediate ancestors in title ever, in possession of the property described by the corrected deed. His own acquisitions specifically excepted whatever had been sold to Albert Phenis, which by the conveyance records through an unambiguous corrected description (as we shall show shortly) could clearly be ascertained; and the property thus disclosed as excepted did not contravene or enlarge the terms of the exception clauses in plaintiff's chain of title.
As stated earlier, the tract acquired by defendant by deed recorded in 1915, in so far as pertaining to land in Section 40, was described (in accordance with the corrected description by which Phenis acquired same) as follows: "That portion of lot or Fractional Section 40, lying west of THE SECTION LINE BETWEEN SECTIONS SEVEN (7) AND EIGHT (8) ABOVE, PRODUCED[7] and south of a line drawn west from a point on the center line of the Morgan's Louisiana & Texas R. R. Co., said point being 600 feet north of the intersection of said railroad, with Bayou Saut D'Ours[8] * * * and containing 442 acres, more or less [9] * * *." (Capitalization and italicization by this court.)
The following sketch depicts Section 40 and the lines used by the above description, as well as the tracts into which Section 40 is divided by these intersecting lines. (The acreage designations of the tracts into which Section 40 is divided by such lines were calculated by measurements made outside the conveyance records.) *418 For convenience in discussion, we will hereafter refer to such tracts and such lines by their designations on this sketch.

*419 We think the description indicated in defendant's deed is clear and unambiguous. The only portion of Section 40 which is west of the line described in the deed and depicted on the sketch as AB and south of the line described in the deed and depicted on the sketch as CD is Tract 2.
Further, the clear preponderance of the expert testimony by surveyorstwo of whom testified for plaintiff and four of whom did so as experts for defendantin the record supports this conclusion.
The expert surveyors testifying on behalf of plaintiff clearly and unequivocally testified to this effect. Their testimony that the lines described by the deed and depicted as AB and CD should, in the absence of other direction by the deed, be projected as shown by the sketch (without terminating in the interior of Section 40 at, for example, point "E") is completely corroborated by all defendant's surveyors in so far as AB is concerned, and these latter witnesses assign no convincing reason why a similar principle should not be applied to CD. One of the surveyors employed as expert witnesses by defendant, when asked to describe unambiguously Tract 2 using the lines as bounds, did so identically (Tr. 1294) with the description used by defendant's correction deed.[10]
This expert witness for defendant, corroborating testimony to this effect by plaintiff's witnesses, stated (Tr. 1282): "Whereever you have a description that is complete and intelligently describes the property, the `acreage clause' is the weakest point of the description and would have no effect on the interpretation of that description." Testimony to the same effect was given by another of defendant's experts. (Tr. 1246.)
This preponderant expert opinion testimony is in accord with our settled jurisprudence that a sale by given bounds conveys only the property within such bounds, and that acreage designations appended to such specific descriptions do not enlarge or restrict the grant described by the specific bounds. Motichek v. Perriloux, 231 La. 849, 93 So.2d 190; City of New Orleans v. Rathborne, 209 La. 93, 24 So. 2d 275; W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184; Bender v. Chew, 129 La. 849, 56 So. 1023.
In view of this jurisprudence, inapplicable are cases from common-law jurisdictions holding the acreage designation indicative of the extent of the estate conveyed, see the annotation at 153 A.L.R. 4, entitled "Relief, by way of rescission or adjustment of purchase price, for mutual *420 mistake as to quantity of land, where contract of sale fixes compensation at a specified rate per acre or other area unit," in suits between the parties to a sale at so much per measure, timely brought (cf. LSA-C.C. Art. 2498), by a buyer to secure a diminution of the price when the quantity is found to be less than stated. Cf. LSA-C.C. Arts. 2492, 2494.[11] Cf., also, LSA-C.C. Arts. 854,[12] 2495; Comment, "The Obligation to Deliver in Sales of Land," 1 La.Law Review 608 (1939); Note, "Sales Sales per MeasureSales for a Lump SumSales per Aversionem," 16 Tul.L. Rev. 641 (1942).[13]
The contention of defendant's surveyors that the description by which defendant acquired must be construed to contain Tracts 1, 2, and 3, in order to conform with the acreage designation is thus contrary to such jurisprudence.[14] In so far as defendant contends that the deed is ambiguous as designating the acreage conveyed thereby as "442 acres, more or less," whereas actual measurement of Tract 2 as described therein indicates that such tract conveyed contains only 183.51 acres,[15] this contention has the demerit of suggesting that a deed clear and unambiguous on its face may, by virtue of unrecorded and extrinsic evidence,[16] be converted into an ambiguous one. To the contrary, of course, extrinsic evidence to explain a deed may be resorted to only where the deed itself is ambiguous. Article 1945 of the LSA-Civil Code, see below.
Ultimately, defendant's arguments that plaintiff cannot prove title to any portion of the disputed tract depend upon an assumption that the description obtained from the conveyance records of the property excepted from plaintiff's acquisition as previously sold to defendant's ancestor in title is at least ambiguous, so that extrinsic evidence (Di Cristina v. Weiser, 215 La. 115, 42 So. 2d 868), such as acreage evidence (Plaquemine *421 Oil & Development Co. v. State, 208 La. 425, 23 So.2d 171), or the alleged subsequent construction of the deed by the parties (LSA-C.C. Art. 1956, Pendelton v. McFarlane, 222 La. 569, 63 So.2d 1), may furnish a guide to its interpretation.
But while the "courts are bound to give legal effect to all such contracts according to the true intent of all the parties," LSA-C.C. Art. 1945(2), nevertheless, such "intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences." LSA-C.C. Art. 1945(3). See, e.g., Stack v. De Soto Properties, 221 La. 384, 59 So.2d 428, cf., Doiron v. O'Bryan, 218 La. 1069, 51 So.2d 628; Weber v. H. G. Hill Stores, Inc., 210 La. 977, 29 So.2d 33. We find the property excepted from plaintiff's title as previously conveyed to Phenis is clearly and unambiguously described by the corrected description in the title emanating from Phenis and now held by defendant. The extrinsic evidence offered over plaintiff's objection is thus inadmissible to prove that the deeds in defendant's chain of title conveyed other or more land than the property (Tract 2) therein unambiguously described.
In summary, the plaintiff's predecessors in title acquired all of Section 40, except that portion reflected by the conveyance records to have been sold to Albert Phenis, which we have determined to have included Tract 2, and only Tract 2.
Defendant's alternative plea of prescriptive title by ten years' possession under its 1915 acquisition deed, which was translative of title to the property therein described, LSA-C.C. Art. 3478, is of course limited to the property described in such deed, which we have held described and conveyed only Tract 2 of the land in controversy. Since we have already held that defendants acquired recorded title to Tract 2, it is unnecessary for us to pass upon this alternative plea.
Immediately before the argument on rehearing, the defendant-appellee Humble Oil and Refining Company in this court filed for the first time (under the apparent authority of LSA-C.C. Arts. 3464, 3465, and Code of Practice Art. 902), a plea of prescription to plaintiff's demand for an accounting and the return of any minerals removed from any property of which plaintiff might be decreed the owner. This plea was specifically based only upon the one-year prescription of LSA-C.C. Arts. 3536-7 applicable to actions for offenses, quasi-offenses, and related actions and the three-year prescription of LSA-C.C. Art. 3538 applicable to suits upon accounts. Under these codal articles and the jurisprudence thereunder, the prescriptions pleaded are clearly not applicable to this petitory action by an owner to recover his property and the minerals produced therefrom.
For the reasons assigned, the judgment of the trial court is affirmed, in so far as it dismissed plaintiff's suit claiming title to Tract 2 as set forth on the plats and pleadings of this action, said Tract 2 being more particularly described as follows:
Tract No. 2: That portion of Fractional Section 40 lying West of the Section line between Section 7 and Section 8, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River, St. Charles Parish.
It is further ordered that the judgment of the trial court be and the same is hereby annulled, reversed and set aside, in so far as it dismissed plaintiff's claim to be recognized as the owner of Tracts 1 and 3, as described by the plats and pleadings herein, and as more particularly described below in our decree; and
It is further ordered that there be judgment in favor of the estate of Jacques E. Blevins, appearing through the duly qualified and authorized testamentary executrix, *422 recognizing it to be the true and lawful owner of and as such entitled to the immediate possession, with all right, title and interest, in and to the following described property:
Tract No. 1: That portion of Fractional Section 40 lying West of the Section line between Section 7 and Section 8, produced, and North of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River, St. Charles Parish.
Tract No. 3: That portion of Fractional Section 40 lying East of the Section line between Section 7 and Section 8, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D'Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River, St. Charles Parish.
It is further ordered that the Humble Oil and Refining Company release and relinquish its possession of the above described property to said owner thereof and that said Company render unto said owner a full accounting for any and all oil, gas, and other minerals which it may, at any time, have removed therefrom. It is further ordered that this cause be remanded to the lower court for a proper adjudication of the rights of the parties plaintiff in accord with this decree.
All costs of this appeal are to be paid by the defendant-appellees.
Affirmed in part: reversed in part.
HAMITER, J., concurs in part and dissents in part.
McCALEB, J., dissents in part.
HAWTHORNE, J., concurs in the decree affirming the judgment of the lower court as to the land designated and described as Tract 2; and dissents from the holding of the court in all other respects.
HAMITER, Justice (concurring in part and dissenting in part).
For the written reasons which I assigned on the original hearing of this cause I agree that the suit should be dismissed as to tract No. 2. And for the same reasons I am of the opinion that plaintiff's demands should be rejected also as to tracts Nos. 1 and 3.
McCALEB, Justice (dissenting in part).
An analysis of the majority opinions in this case reveals but little difference of view in respect of the unique ruling that a purchaser of land described by lots or fractional sections, excepting therefrom certain land which had been previously sold to another, acquires a title not only to the land he bought and paid for but also to the acreage that he did not buy or pay for, in case the prior deed conveying the excepted property to the third party contains a vague or indefinite description of the land. Indeed, the only perceptible variation in the major premise of the first opinion and this one is that the former completely ignored the fundamental principle that a plaintiff in a petitory action must recover upon the strength of his own title and not upon the weakness of that of the possessor, whereas this opinion, while giving recognition to that principle, fails to apply it and proceeds to decide the case on the weakness of the defendant's title.
This last opinion is assertedly predicated on certain basic principles applicable to the transfer of immovables in Louisiana, and it dwells at some length on the doctrine of registry. Yet, it is difficult to discern the connection between the doctrine of registry *423 and plaintiff's title, or rather the lack thereof. How does registry of defendant's deed, or failure to register it, aid plaintiff in this petitory action to recover 408 of the 440 acres he did not buy? Registry cannot supply a title when there is none. However, the majority seems to feel that registry is of some assistance to plaintiff, it being professed that plaintiff is only bound by the description in the deeds to defendants and, since those deeds do not describe all of the excepted acreage, plaintiff is entitled to be recognized as the owner of all undescribed portions of the acreage in defendant's possession even though he did not buy or pay for them.
Pursuing this line of thought, the majority indicate that failure to recognize plaintiff's title to the excepted property, when the conveyance records show that considerably less land was accurately described in the transfer to defendants than the acreage stated therein, would be violative of public policy in that it would allow defendants to enlarge their title by the admission of extrinsic evidence to show that they were delivered all of the land of which they admittedly are in possession.
This asserted fear of unreliability of extrinsic evidence to prove title has no relation to this case. I reiterate that plaintiff must recover on his own title. There might be some basis for the deduction were this a case in which plaintiff was claiming that he did not get title to and possession of all of the property he bought and paid for. But, of course, that is not the situation here as the only property claimed by plaintiff is the property he neither bought nor paid for, i.e., the property that was excepted in the deed.
Unlike the original opinion, this one recognizes that defendants have a good title to 183.51 acres of the 440 acres of land of which they have had possession for many years and gives the balance of 215.41 acres to plaintiff. This result emanates from a finding that the description contained in the correction deed, under which defendants hold, is clear and unambiguousand this, despite the fact that such a construction of the descriptive language in the deed gives defendants only 183.51 acres, whereas the acreage called for in the conveyance is 442 acres, more or less.
While I, of course, agree that the method of identifying land by acreage is the weakest known and yields to every other method (W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184), this does not mean that an acreage call is not entitled to be considered in appraising the other descriptive recitals. In this connection, it is to be observed that the land designated in defendants' title is not described by metes and bounds (a sale per aversionem); it is described as being all land west of a projected section line and south of another line drawn west from another point, which eastern point is particularly described, the total containing 442 acres, more or less. These recitals require interpretation, in my opinion, in order to ascertain the true intent of the parties, that is, whether the language describes the tract as including only that land which is west of the section line projected and which is also south of the line drawn west from the designated point, as the majority finds to be the case, or whether it covers all land on the western side of the produced section line and all land south of the other line drawn west to the point at which it meets the section line, as contended by defendants.
In my view, the correctness of defendants' position is manifest, coinciding substantially as it does with the acreage call and all of the extrinsic evidence of the parties involved, plus possession in good faith of the 440 acres for over ten years.
On the other hand, the construction adopted by the majority leads, in my estimation, to absurd consequences for defendants are said to own less than one-half of the acreage set forth in the deed. It is a salutary principle of our law, stated in Article 1945 of the Civil Code, that legal agreements having the effect of law upon *424 the parties, "none but the parties can abrogate or modify them". And upon this principle are established certain cardinal rules of construction, the third rule being that the intent of the parties is to be determined by the words of the contract "when these are clear and explicit and lead to no absurd consequences".
I would construe the description of the deed in question so as to give effect to all calls therein and thus carry out the true intent of the parties to convey and purchase 440 acres of land, more or less.
The judgment of the district court should be affirmed.
HAWTHORNE, Justice (concurring in part and dissenting in part).
I concur in the decree on rehearing insofar as it dismisses plaintiff's suit as to Tract 2. I dissent from the holding of the majority of the court in all other respects for the legal reasons assigned in my dissent to the original opinion, and I am in full accord with the legal principles on which the dissent of Justice McCALEB on rehearing is based.
As just stated, I have not changed my position in regard to the principles of law upon which I founded my dissent on first hearing. I note, however, that there appears to be some ambiguity in my statement of facts dealing with acts of possession by the defendant, and I take this opportunity to clear up that ambiguity.
The 1,000-acre tract referred to in my dissent on first hearing consisted of 442 acres conveyed to Phenis by Dusenbury and 552 acres conveyed to Phenis by Louisiana Meadows Company, Ltd. Both of these tracts were subsequently acquired by defendant Manufacturers Record Publishing Company and leased by it to Humble Oil & Refining Company. Trapping leases, sales of timber, and other acts of possession mentioned in my original dissent had reference to the 1,000 acres. For instance, the 11 wells drilled by Humble were on the 1,000-acre tract; only two of these wells were drilled on the 408 acres in controversy in this suit, and they were on the tracts designated as Tracts 1 and 3.
FOURNET, Chief Justice (concurring).
I fully concur in the views expressed by the majority. However, when such diversity of opinion exists with respect to property having the great value of that involved in this case, lending an illusion of merit to the criticism that has been voiced by some of the interested parties, because of my concern for the integrity and the stability of the jurisprudence, I felt it my duty to read the entire record, to make a careful study and analysis of the evidence and the law applicable thereto, and, in order to make clear what might be otherwise confusing to those who will hereafter study this case, to record my findings.
While the record is voluminousconsisting of 8 volumes totalling 1892 pages, with at least another thousand pages to be found in the some 350 exhibits introduced[1]  the facts are very simple. They may be succinctly stated to be that both the plaintiff and the defendants trace their title to a common authorAllan T. Dusenbury[2] *425 who, at a tax sale in 1908, acquired Sections 38 and 40 in T. 14 S., R. 20 E., and subsequently, by instrument dated March 9, 1910, sought to convey to Albert Phenis 442 acres in Sections 39 and 40;[3] joining, on December 15, 1910, the Truck Farm Land Company,[4] in transferring to the Louisiana Farm Land Company some 14,967 acres, including ALL of Sections 39 and 40 except certain specified lots described in accordance with a plan of survey of the village of Paradis, Louisiana, that are not involved here, and, also, "approximately 440 acres previously sold to Albert Phenis," under the deed of March 9, 1910.
It is obvious, therefore, that the plaintiff, who deraigns his title from the Louisiana Farm Land Company, established his ownership under the deed of December 15, 1910, to all of Section 40 except that portion previously conveyed to Phenis by the deed of March 9, 1910. The decision in the case therefore resolves itself into a determination of what land in Section 40 is identifiable under the description contained in the March 9, 1910, deed [5] as being thereby transferred to Phenis. If this description sufficiently operates to transfer a right to any identifiable portion of the property in Section 40, the plaintiff's suit, to this extent, must fail.
It is apt to observe that although the deed of March 9, 1910, purports to convey some 442 acres "more or less" in Sections 39 and 40, there is nothing in the deed itself from which it can be determined just how much of this acreage was located in Section 39 and how much was located in Section 40. Furthermore, Dusenbury not only had no title to any portion of Section 39, but the description of the land purportedly conveyed in Section 40 is so uncontrovertibly defective it is impossible for anyone reading that description as written to extend the calls therein set out and locate the land on the ground, and no one ever has, for these calls, when followed, do not, as the experts express it, make a "firm description" of any property whatsoever. This was very ably demonstrated in our original majority opinion and requires no further emphasis here.
Actually, Allan T. Dusenbury, who drew up the 1910 deed and prided himself with being a civil engineer, denied he had signed the instrument as recorded, implying a clerk in the recording of the same omitted *426 essential words.[6] He was so emphatic about the defectiveness of the description in the 1910 deed he said: "* * * my self respect would not allow me to say that I signed such an instrument as that recorded instrument is." (Tr. 1307-08.) Commenting further, he said that "no one but a nitwit would not know that an error was made" (Tr. 1435) and that "common sense would not allow even a `half-wit' to make errors like that."[7] (Tr. 1431.)
According to Dusenbury, apparently the only living party to the deed of March 9, 1910, "Albert Phenis or somebody connected with his outfit discovered the error that had been made in describing it, and asked to have the correction deed issued; which was about two (2) years after the original deed was executed" (Tr. 1423), explaining, further, that Phenis, in telling him the description as recorded was not correct, stated it "had been brought to his attention, I think by his home office;[8] and he asked me, or somebody in my office, to have a correction deed made" (Tr. 1434) "conveying to him the land that was intended to be conveyed to him in CLEAR terms" (Tr. 1434), and he, accordingly, drew up the instrument termed "Correction of Title by A. T. Dusenbury to Albert Phenis" that was *427 executed on April 18, 1912. (The emphasis on the word "clear" appears thusly in the record: all other emphasis has been supplied by me.)
The language used in this correction instrument to describe the property Dusenbury and Phenis INTENDED to convey[9] is so clear and unambiguous that when the lines are produced according to the calls the deed sets out a "firm description" that unquestionably describes only Tract No. 2 on the plat in the original majority opinion. The fact that Tract No. 2 contains only about 183.51 acres while the deed as corrected states the property thereby being conveyed contains "442 acres more or less" is immaterial, for, as testified by J. C. De Armas, Jr., one of the two independent experts introduced by defendants, "Wherever you have a description that is complete and intelligently describes the property, the `acreage clause' is the weakest point of that description and would have no effect on the interpretation of that description"[10] (Tr. 1282); further, "that the acreage would be predicated wholly on the result of the survey of that area" (Tr. 1291-92), that is, a survey made under the description contained in the deed. This is in accord with our jurisprudence.
The defendants, obviously realizing that the 1910 deed as corrected in 1912 was translative of title to Tract No. 2 only, endeavored to skip over this link in their chain of title and sought, throughout, to base their claim to the entire acreage involved in this litigation (Tracts 1, 2, and 3) on the instrument of March 9, 1910, alone, contending that inasmuch as the description therein was ambiguous, they should be permitted to show and to locate by extrinsic evidence the land intended to be conveyed by Dusenbury and Phenis at the time it was drawn and executed.
If such evidence was admissible under this theory, clearly the best evidence of *428 the intention of these parties was the interpretation they themselves gave the 1910 instrument in the correction document executed by them on April 18, 1912, and in which they acknowledged before a notary public that the land intended to be conveyed by the deed of March 9, 1910, was erroneously described, and that it was their desire "by these presents to correct the said error and place the title as far as said correction is concerned of proper record." They also declared "that the true and correction (correct) description of said property" was as therein stated,[11] and, further, that they "hereby authorize and require the Clerk of Court and ex-officio Recorder in and for the Parish of St. Charles, to note this correction in the margin of Conveyance book * * * wherein the original deed was formerly registered so that property may be correctly and perfectly described." The parties themselves by this deed thus wiped out of existence the description in the March 9, 1910, deed and substituted therefor the description as set out in the 1912 instrument,[12] and they so declared to the world by their public recordation of it. (The emphasis has been supplied by me.)
However, in my opinion, it is immaterial for a decision in this case whether the deed of 1910 is totally defective, i.e., not translative of title to any portion of Section 40, as contended by the plaintiff, or, as contended by the defendants, only ambiguous, entitling them to prove by extrinsic evidence the actual land intended to be conveyed, for, as pointed out by the author of the majority opinion on rehearing, in the several transfers made of the property prior to the plaintiff's acquisition thereof, there is a specific reference to the fact that there is excepted from the sale of the property in Section 40 that portion previously sold to Phenis. Several of the transfers containing this exception occurred after the execution and recordation of the correction instrument of 1912, and, under our law of registry, the plaintiff was bound by these instruments.
By the same token, the defendants were likewise bound by these instruments, and they cannot, therefore, assert title to any land in Section 40 that is not conveyed to them under the March 9, 1910, deed as corrected in 1912. It necessarily follows that when Manufacturers' Record acquired its interest direct from Power (a party to this correction deed) on July 23, 1915 (some three years after the correction deed was executed), and under the IDENTICAL language used in the 1912 instrument, it acquired in Section 40 only that property therein specifically described, which is Tract No. 2. It could not, thereafter, convey a greater right to its mineral lessee, the Humble Oil and Refining Company, or to those who acquired through either one or both of these companies, particularly when the Humble lease, granted in 1938, is, according to its very terms, limited to that portion of Section 40 described in the 1912 correction instrument, which is Tract No. 2.
NOTES
[1] This actually was a sale by Truck Farm Land Company, Ltd. A. T. Dusenbury joined in the execution of this deed.
[2] The lands conveyed were low, swampy lands, commonly known as Louisiana marsh lands. Before exploration for oil, the lands were by their nature suitable only for the trapping of fur-bearing animals and the cutting of timber from the ridges.
[1] The action was originally brought by Jacques E. Blevins, who died prior to the trial in the district court. By appropriate motion Margaret Lauer, his testamentary executrix, was substituted as party plaintiff, although for convenience in discussion we will hereinafter refer to Blevins as the plaintiff.
[2] The other defendants are claimants to mineral interests affecting the property.
[3] The portion of the description enclosed in brackets by this court clearly describes a small tract in Section 39 (see plat printed with original opinion), ownership of which by Manufacturers is conceded by plaintiff and which plays no further part in this opinion.
[4] See LSA-R.S. 9:2721, where this fundamental tenet of our property law is reiterated thusly: "No sale, contract, counter letter, lien, mortgage, judgment, surface lease * * * or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovables is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties." (Italics ours.)
[5] The following observations are by way of illustration only and specifically without reference to the witnesses or evidence in the present proceeding. Assuming that such evidence as defendant offered here proves that Dusenbury's intention in 1910 was to convey all of the property in dispute to Phenis, and that the reliability of such present proof is unquestioned, nevertheless, the illustrations indicate why as a matter of public policy this type of proof is not admissible over objection to prove by itself title to immovables in Louisiana.
[6] In the six deeds in plaintiff's chain of title in 1910 and 1911 wherein Sections 39 and 40 (included in approximately 15,000 acres) were conveyed, the exception is described as stated by the original conveyance by Dusenbury to plaintiff's author in title, i.e., "There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis as per private act passed before William Renaudin, Notary Public, and recorded in the Conveyance Records of St. Charles Parish * * *." Plaintiff originally acquired in 1940 from Wisner Estates, Inc., which in 1917 (in the wording of the exception as stated in the intervening conveyances of 1913 and 1917) had acquired title in a conveyance of approximately 6,500 acres to: "All Sec. 40 and that portion of Sec. 39 North of S.P.R.R. tract except approximately 440 acres sold to A. Phenis in T. 14 S., R. 20 E." The description in plaintiff's acquisition, as corrected by deed in 1945, plainly included the tract here in question, but of course the self-help of this corrected description is not available in aid of plaintiff's claim.
[7] The line described by the capitalization is shown on the sketch in the text as AB, and henceforth referred to as such. All surveyors agree that this line is located as shown.
[8] The line described by the italicized portion of the description is shown on the sketch in the text as CD. All surveyors likewise agree as to its location.
[9] The acreage designation refers also to land conveyed in Section 39, the description of whichthe omission indicated by the asterisks aboveby clearly located lines is easily ascertainable and which is not claimed by plaintiffs herein. Actual measurements on the ground indicate that the portion of Section 39 conveyed comprised 32.56 acres.
[10] Cf. also the self-styled unambiguous and very similar description of Tract 2 given upon a similar request by another of defendant's surveyors at Tr. 1154-55: "All that portion of Fractional Section 40 bounded on the west [east] by the Section line between Sections 7 and 8 above produced and bounded on the north by the projection of a line drawn from a point on the center line of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet North of the intersection of said Railroad with Bayou Saut D'Ours." (Exhibit TX7C1) As this witness for defendant explained his description, "In other words, Tract Number (2) includes all of that part of fractional Section (40) which is bounded on the North by the above East-West line and which is bounded on the East by the above-described North-South line." In attempting to describe unambiguously Tracts 1, 2, and 3 in terms of the lines utilized in the original description, this witness supplied the following description: "All that portion of Fractional Sec. 40 lying west of the section line between Sec. 7 & 9 above produced, together with that portion of Section 40 bounded on the west by said section line between Sect. 7 & 8 above produced and bounded on the north by a line drawn west from a point on the centerline of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet north of the intersection of said railroad with Bayou Saut D'Ours." (Exhibit 7X7A1; see Tr. 1144-1148.) The emphasized words indicate what it was necessary for the witness to add to the actual description by which defendant acquired the property in order that said description describes Tracts 1, 3, and 2, rather than merely Tract 2. (Tr. 1146-7.)
[11] Under LSA-C.C. Arts. 2492 and 2494, assuming they might have been applicable in a suit between the parties to the original sale, the deficiency in the quantity of a sale at "so much per measure" "of a certain and limited body" does not result in a greater quantity being conveyed; the purchaser merely has the right, under certain conditions, to claim a diminution of the price, or the option to demand delivery, if practicable, of the deficiency.
[12] "If any one sells or alienates a piece of land, from one fixed boundary to another fixed boundary, the purchaser takes all the land between such bounds, although it give him a greater quantity of land than is called for in his title, and though the surplus exceed the twentieth part of the quantity mentioned in his title."
[13] This cited note concerns Fitzgerald v. Hyland, 199 La. 381, 6 So.2d 321, a suit between the parties to a contract to sell and buy certain real estate, wherein it is stated in summary of the Louisiana law applicable to such disputes, 6 So.2d 325: "In the absence of fraud or concealment, the rule established by the jurisprudence of this state is that, in sales where specific boundaries are given or where the sale includes property from one fixed boundary to another, the sale is per aversionem, and the seller conveys, and the buyer gets, all the property within the boundaries given, whether it be more or less than the measure mentioned in the contract, and that, in sales where fixed boundaries are designated, such measurements and distances as may be mentioned in connection with the description must yield to the designated boundaries."
[14] We likewise find to be unimpressive the suggestion that the description in the deed is of land clearly locatable as including all of the property in dispute (Tracts 1, 2, and 3) because certain surveyors went on the ground did so locate it. The evidence indicates that such surveys were not made by an independent interpretation of this description but simply in response to directions to establish the predetermined lines.
[15] With the tract in Section 39 conveyed also by the description, which is measured at 32.56 acres, the actual acreage conveyed thus would be 215.07 acres, rather than "442 acres, more or less."
[16] That is, the surveys and measurements of quantity conveyed by bounds indicating a lesser quantity than designated.
[1] The major portion of the evidence in the record proved to be wholly unnecessary and irrelevant for a decision in this case. Much of it was devoted to an attempt to establish title by possession of 30 years, which proved to be futile and was abandoned. A large part of the remainder was introduced by defendants, over plaintiff's objection, in an effort to establish their title to Tracts Nos. 1, 2, and 3 by showing the intention of the parties through oral explanation of the deed of 1910, although there was of record an instrument executed by these same parties in 1912 in which that intention was spelled out in clear and unambiguous language.
[2] Dusenbury was, at the time, the treasurer of the Truck Farm Land Company. This company had, in 1906, acquired from O. W. Crawford, along with other property "A certain plantation known as the `Vacherie' plantation, composed of sections 39 N. and E. of Bayou Saut D'Ours, also all of Secs. 38 and 40 in T. 14 S.R. 30 E." Sections 38 and 40 were conveyed to Dusenbury by the sheriff pursuant to a sale provoked to pay the unpaid taxes of 1907 assessed in the name of the Truck Farm Land Company, and, in a document executed on May 27, 1940, Dusenbury stated he "actually purchased said property for and on behalf of the Truck Farm Land Company, Ltd. in his capacity as treasurer of said corporation." It is to be noted that under this tax deed Dusenbury actually acquired no title whatsoever to any property in Section 39.
[3] The land sought to be conveyed by this deed is described therein as follows: "That portion of lot or Fractional section 40 lying West of the section line between sections seven (7) and Eight (8) above, produced, and a line drawn West from a point on the center line of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet North of the intersection of said Railroad with Bayou Saut D'Ours." (The description of the land in Section 39 is not included inasmuch as it is not involved in this litigation.)
[4] In the deed it is stated that Dusenbury was appearing for the purpose of renouncing, abandoning, relinquishing, transferring and assigning to the Louisiana Farm Land Company "all right, title, and interest which he has, or may have, to any and all of the lands herein conveyed and described." Another party to the deed was the Louisiana Meadows Company, conveying other property which it owned and which is not included in this litigation. Edward Wisner was the president of both the Truck Farm Land Company and the Louisiana Meadows company and signed the deed as such. The present plaintiff secured his interest in the property in Section 40 through Wisner.
[5] This description is set out in Footnote No. 2, supra.
[6] On the witness stand Dusenbury insisted the essential words omitted from the description, so far as Section 40 is concerned, were "south of," which should have been inserted between the words "and" and "a" following the phrase "above, produced" (Tr. 1423), so that the description would read thusly: "That portion of lot or Fractional Section 40 lying West of the section line between sections Seven (7) and Eight (8) above, produced, and south of a line drawn West from a point on the center line" of the railroad. The italicized words are those Dusenbury considered sufficient to describe the property in Section 40 he intended to convey to Phenis by the 1910 deed.
[7] A month and a half after executing the deed of March 9, 1910, Phenis, by deed of April 21, 1910, conveyed the land he purportedly acquired in Section 40 to Ray C. Power, using the IDENTICAL description contained in the March 9, 1910, deed as it appears on the public records, although that deed of March 9, 1910, was not actually recorded until July 13, 1910, several months later. It is obvious, therefore, that the original deed of March 9, 1910, could ALONE have been used as the basis for supplying the description carried forward into the Phenis-Power deed, and that it, therefore, contained the identical faulty description to be found in the March 9 deed as recorded, Dusenbury's protestations to the contrary notwithstanding. (The original deed was never produced, and it was stated by the defendants it had been lost or misplaced.) Furthermore, even had there been an omission of the words "south of," from the description of the land conveyed in Section 40, this recordation was the only instrument on the public records that limited the acreage in Section 40 that Louisiana Farm Land Company acquired under its deed of December 15, 1910, and that was, therefore, binding on the company. That recordation described no identifiable land whatsoever; consequently, there was no legal limitation on the acreage in Section 40 acquired by the company under its 1910 deed of December 15.
[8] It would appear the error in the description of the property was first noted by Ray C. Power, who went to Phenis for a correction, as these parties, on March 16, 1912, executed what is termed a "Correction of Title by Albert Phenis to Ray C. Power," wherein the words "south of" are added to the description of the land in Section 40, and the word "line" is substituted for the word "land" in the description of the land in Section 39, exactly as was done later in the Dusenbury-Phenis correction instrument. In this instrument Phenis and Power recognized that "an error was made in the description of said lands," and the parish clerk was authorized to note the correction "in the margin of the Book and folio wherein the original deed of sale was registered so that the property may be correctly and perfectly described." It was not until more than a month later that Phenis went to Dusenbury (apparently because recordation of the correction instrument without the approval of Dusenbury was refused by the officials) for the correction of their deed by the document of April 18, 1912. Dusenbury stated that both of these correction instruments were taken to St. Charles Parish by Phenis, where they were recorded on April 26, 1912.
[9] This corrected description, in so far as Section 40 is concerned, reads: "That portion of lot or fractional section 40 lying west of the section line between sections seven and eight above produced and south of a line drawn west from a point on the center line of the Morgan's Louisiana and Texas Railroad Co., said point being 600 feet north of the intersection of said railroad, with Bayou Saut D'Ours * * *." It is obvious that the only change made in the description was the addition of the italicized portion. This is the only addition that Dusenbury, who drafted both the original and the corrected instruments, insisted, even up to and during the trial of this case, was all that was needed to describe just exactly the land he intended to convey to Phenis and that Phenis intended to purchase.
[10] This testimony corroborates fully the two experts testifying on behalf of the plaintiff (Guy Seghers and Earl M. Collier) as well as another of the defense experts, O. E. Young. The main defense witness, Jack S. Tolerwho admittedly was instructed by his superiors in the Humble Oil and Refining Company to confirm a survey made by J. M. Nichols and prepare himself to testify in behalf of Humble in the suit then in progress although acknowledging that without the acreage call he could not locate any property whatsoever in Section 40 under the description in the 1910 deed, took a view contrary to that of the defense witnesses De Armas and Young, i.e., he stated the acreage call was the all important consideration in the deed. He therefore sought by manipulating a number of tracts he carved from Section 40 to locate some combination of them that would total 442 acres, and, once that combination was ascertained, concluded this was the acreage intended to be conveyed by the 1910 deed. The only other expert testifying on behalf of the defendant (Fred N. Shutts) sought to uphold throughout the views of Toler, whom he followed on the stand and whose testimony he had just heard. The testimony of Toler and Shutts is not impressive. It is not only contrary to the defendants' other two expertsDe Armas and Youngand that of the plaintiff's two expertsSegher and Collier, but, like Young's testimony, it is contradictory in many material aspects and, in other aspects, Toler and Shutts contradict each other. Additionally, Shutts admitted he knew nothing about the property except what he had been told in a conference with Toler and defense counsel.
[11] This description is given supra in Footnote No. 8.
[12] Such a notation appears not only on the margin opposite the 1910 Dusenbury-Phenis deed as recorded, but also on the margin of the 1910 Phenis-Power deed as recorded. The notation is not dated, and the handwriting was not identified during the trial, but the present clerk of court testified the notation was not in the usual form officially employed by the recordation officials, though both instruments directed those officials to make such a notation on both original recordings.